Mr. Heineke. Thank you, Your Honor. Rex Heineke. It is the Court, Rex Heineke, on behalf of the appellant, John Stakonis. I'd like to start with what we believe was the fundamental error committed by the district court. In the Phillips case, this court said the specification is always highly relevant to the claim construction analysis. Usually, it's not. Usually, it is dispositive, is the single best guide to the meaning of a disputed term. Do you respectfully submit? Does it trump the claim language? It doesn't trump the claim language, but you must look at the specification to understand what... In fact, in Phillips itself, the specification could have been read as the original panel did, to narrow the meaning of that particular claim term, and instead, the claim term itself and its own meaning was more important than what the specification said, right? Yes, but I think, Your Honor, what needs to be done in these cases is to read them in combination. That is, the way you understand it is to read both of them... If the claim terms are plain and their meaning is obvious, do we even have to go to the specification? Well, if the terms are completely obvious, I think the answer to that is no. If you look at the Allen Engineering case and the Chef America case, I think they demonstrate that plain terms can control, but even there, what happened in both those cases is the court looked to the specification. In Allen Engineering, it was the contradiction between the specification and the claim that led to the invalidity. In Chef America, not only did the court look at the language of the claim, the court then went on to look at the specification, the prosecution history, and then determined what the meaning was. Mr. Hanke, it seems to me that the construction that you're advocating here is difficult to square with the surrounding language in the claim, and it's hard for me to understand that that's the construction. What does within said system interface mean? It sort of renders that phrase irrelevant. I don't think it renders the phrase irrelevant. What we understand, what we argue, and what we believe it means is that the script processor controls the data transformation. And so within said system interface is when the user, or you could have a human user, you could have a computer user, but whoever inputs the information about how to transform the data, that they enter the commands that tell the system how to manipulate and transform the data. It seems to me you're arguing the case you would like to have rather than the case you do have, because the language is hard to avoid. No doubt what was written was not what was intended, because it just doesn't really make a lot of sense, and it certainly conflicts with the specification, but it says what it says. Well, Your Honor, it conflicts with the specification if you do what the district court did, which was put the emphasis on data transformation within the system interface instead of control. Where does the script processor reside? Well, these things don't really reside because this is computer software. Part of the problem here is conceptual computer software. Things like the data bag, there isn't really such a physical construct out there. It's an abstraction to describe how the software works. When you look at the figure two of the patent, it does locate within a schematic the script processor as being connected with the export and the import data interface. Yes. So the script processor, the only interface it's connected to is the import data interface and the export data interface. It's not connected to the management user interface. But it's clear that the information that tells the script processor how to operate comes through that. That is, it comes through the interface either of a user or a computer that puts in all the information that gives the rules to the script processor and the rule processor, telling it how to transform the data. So if the data is, if the rules for the transformation are through the script processor, then it seems to me that the transformation itself, when we say it occurs within the systems interface, we're talking about items 32 and 34 of figure two, which is the import data interface. Well, we argued below, Your Honor, that is our alternative position, what our opponents refer to as our quote, about face. We argued that in the alternative systems interface included the import and export interfaces and those expressly in the patent are shown to involve the data bags, which is where the transformation takes place. We think that's the alternative way to look at this. You say alternative, but you argued at the Markman hearing that those two were opposite. I understand, Your Honor, but we're stuck with the fact that there was an interpretation at the Markman hearing, and so the judge said this is what it meant. So we couldn't then go in in opposing summary judgment and say, well, we're going to ignore what you just ruled. Maybe this is going the same direction as Judge Lynn a minute ago, but if the script processor doesn't reside in the systems interface, and the data transformation doesn't occur in the systems interface, what happens? What is the systems interface doing? The systems interface is the way the user, or as I said, a computer, puts the information into the script processor and tells it how to do things. That is, that's the input where somebody says, this is how we want you to transform this particular information. This is how to do it. But that interface is supposed to define the scripts. Right, but the scripts are simply software that tells you how to do things. I'm having trouble seeing how you're using the limitations of the claim as they seem to be written. Okay, I'm not sure I understand. Well, it's the same problem I'm having. Limitation 1A covers defining scripts, not limitation 1C. Right. And yet you want to say somehow that this within systems interface is defining the scripts, which is, that's what the data transformation is within the systems interface. You mean that's the interpretation? You mean that's what happens? I'm just reading the language of the claims. Right, but if you read the claim 1C, the whole thing turns on how you interpret the words there about control. That is, our opponents say you should use the last antecedent rule, and therefore, since the words that are closest to data transformation are within said systems interface, then it says data transformation has to occur there. We dispute that. We say that the emphasis is on control. So the control is within the systems interface. Precisely. And the control is the interface. But to control data transformation is what it says. Right, but it's a question of within the systems interface. Right, but does the data transformation occur within the systems interface? Isn't that what it says? I don't think so. Or does the control happen within the systems interface? What's being controlled? The data transformation, but it's the information that you put in. Within said systems interface. Right, but you put the information in through the systems interface that sets the control, that is, how the script processor operates, and therefore, how the data transformation occurs. That is what the dispute really comes down to here. Do you put the emphasis on control, or do you put the emphasis on data transformation? What does systems interface modify? Does it modify control or the data transformation? We submit that it's not clear, and that's why you then have to go to the specifications to understand what occurs. How do you read this phrase then? To control data transformation within said system interface. So how would you have us read that? To control within this said systems interface the data transformation. Isn't that the same thing? The data transformation, therefore, takes place within the system interface. No, it will. I think this is like that. You may have seen these images of what's called a tour rabbit. If you look at it, it's a graphic. If you look at it one way, you go, that's a rabbit. If you look at it the other way, it's a duck. And this is really that same kind of problem. If you look at it one way, and you start out thinking this is about data transformation within the systems interface, that's where you end up. If you look at it and say, no, it's about where is the control? Is the control within the systems interface? Then you reach the conclusion we submit is proper. Our time is escaping. Could you address briefly the conflicts problem? Certainly. Akin Gump represents the client you're representing today. Did you at one time also represent SAS? Yes, we certainly did. Is that a conflict which necessitates some kind of correction? Well, Your Honor, the district court ruled on one thing, and it did not rule on another thing. What it ruled on was the former client issue. Could we go back to my question? Does that warrant correction? No, Your Honor. Why? I'll explain why. There are two issues here, the former client issue and the current client issue. The district court below only ruled on the former client issue. The law is clear that if it's a former client, there's only an issue about disqualification if you receive confidential information. The district court ruled we did not receive any confidential information. It further ruled that when it balanced the interest, as it must under the Fifth Circuit's law in this area, that it would be too prejudicial to juxtapose to have any disqualification, even if there was confidential information. That issue, SAS has not appealed. What SAS is appealing is what is the current client issue. There it contends that it was a current client of Akin Gump's. We submit in the first place the district court never ruled on that. SAS filed a motion for reconsideration. The district court never ruled on that because once it granted summary judgment, it said everything else was moot, and therefore it didn't rule on it. To decide that issue, we submit it would have to be remanded for a factual inquiry as to just what happened here. If this court affirms the ruling on the merits, then we submit there's nothing to decide about disqualification. SAS can pursue its position in its North Carolina lawsuit. If the court reverses on the merits here, then SAS would certainly be entitled to go to the district court and say, please rule on our motion for reconsideration. We think that ruling will be that there was nothing improper here. It all turns on the question of how direct the conflict was. Were we acting directly adverse to SAS? If you look at the cases, and admittedly there are not a lot of cases interpreting directly adverse, the cases are quite clear that this isn't direct adversity. For example, the Freedom Wireless case is a firm got an injunction for one client and then tried to apply it against another client. Or in the Rembrandt case, a law firm sued one person in an industry saying that industry standards violated the patent in question there. Another client said, well, you can't do that because we're in the industry and we, of course, follow industry standards. What about the rehearing petition? Should Aiken Gump be able to pursue that on? I'm sorry, the rehearing? The rehearing petition. I'm not sure what you're referring to. Continue on that. Before Judge Davis, could you seek a rehearing to clarify these issues? Oh, the merits issues or the disqualification issues? No, the disqualification issues. I don't think there's anything for him to decide if, as I said, the court affirms the issue. Because a court in North Carolina can then say, well, what did Judge Davis decide and what is the meaning in this case in North Carolina? So your position is because the retention agreement, the earlier retention agreement, was not before him and he didn't rule on it. That's an issue that wasn't decided that could be decided in the North Carolina case. Precisely. But not if the case goes back and discourse reverse on merit, of course, then it would have to be reconsidered. Okay. Thank you. Thank you. Let's hear from Mr. Castanis. Thank you, Chief Judge Brader, and may it please the court. In any number of cases from this court, as recently as last week in the Bexar Crop Science case, this court has reminded us, as litigants, of the consequences of claim drafting. In this case, the claims were not drafted. As I think every member of this panel has pointed out in questioning my friend, the claims were not drafted in the way he wishes they were drafted. And so there's a lot of linguistic gymnastics and then ultimately some very confusing arguments made with regard to the Allen Engineering case. Let me just, I think the court's questions to my friend. You know, we've got a admittedly somewhat, how do I characterize it? It's an offshoot of our jurisprudence that says, you know, the specification can be more important than the claims in some instances. The claims can be broad, and we're going to bring all the specifics into those claims. Why wouldn't we do that here? Well, you wouldn't do it here because the language won't, but the claim won't allow you to do it. I think you yourself, in questioning my opponent, pointed out the Phillips case where the panel initially narrowed the term baffles. And the court in bank said, no, no, the claim language is what prevails here, even though the specification is a very important concordance to those claims. And let me just point out to you, Chief Judge Breyer, why you can't. You've seen me in dissent at least three times cite that very argument. And the court has said, no, in this case, we're going to use the specification to override what appears to be a meaning of the claims. Why don't we do it here? Well, you don't do it here because there is, well, first of all, because ambiguity is the necessary predicate for going to the specification to do that. And both Supreme Court cases that were cited in the Phillips decision itself, as well as this court's decision in decisions in cases like Thorner and cases like Aventus, both of which have been cited in our brief, say that. Is there ambiguity in the single word baffles? There was no ambiguity in the single word baffle, was there? There was only question as to what it means. That's where we're at right here. That's where we are here. Why don't we go to the specification and embellish it as has been done by your brother? Well, I think if you are embellishing claim language, then you have walked on the side of the line between reading in light of and rewriting. Embellishing is exactly rewriting. That's what's prohibited by anything, by all of this court's decisions. Now, let me just take you to this. But you're really not addressing my… No, no, I think I am. Because you do know that branch of our cases. I wouldn't say it's the trunk of the tree, but there's a branch off there that says even when there's no ambiguity, we are going to use the specification as the preeminent source of meaning. I think it's very hard, Chief Judge Rader, to reconcile. If you read those decisions as saying the language is plain, but I'm going to read it in light of the specification anyway and read some terms in, even though there's no clear disclaimer or clear lexicography in the specification, then I think it's very hard to square those decisions with either the Inbank decision in Phillips or with the Supreme Court's cases, at least one of which I remember being decided. We've been down this road. That has been my dissent on at least three occasions. It was a dissent. Yes, and you've been in the majority. The court needs to acknowledge that branch. Why isn't this one of those branch cases? Well, I'll answer that because I think that even in those branch cases, Chief Judge Rader, even in what you've described as those branch cases, you still have to have claim language that's amenable to the construction. And let me just point out— Amenable. At least amenable. That's a little different from ambiguous, but amenable. How do we identify whether this is amenable? He gives us an amenability argument. He says look at control, skip past the data transformation for a second, and say, ah, it's the control that's in the systems interface, and the data transformation, well, it's happening, but it's the control that's— Right, and let me show you again why that won't work. Let's look at the language of Claim Limitation C. It says to control, and then we have the language that my friend has put at issue, data transformation within said system's interface. But what he doesn't read to you is the and clause after that. And movement of said data into and out of said distribution system. Well, since that's a compound modifier, what is the antecedent of movement? Its antecedent is control. It's to control movement in the same way that it's to control data transformation. If you skip over, as you put it, Chief Judge Rader, the term data transformation, then you have to read that second clause as saying to control into and out of said distribution system. You'd have to leap immediately over movement of said data and go right to the prepositional phrase just like you did with the first clause. That falls apart. That doesn't work. Now, what's really happening— So stick with the claim language and the specification is an enlightenment, not a preeminent source of information. And I think, Chief Judge Rader, if— Despite the branch cases. Well, despite the branch cases. And so what does the specification tell us? What would it tell one of ordinary skill? It would tell someone of ordinary skill the same thing that it told the court in Allen Engineering. So this claim doesn't cover what's in the specification. And, in fact, Judge Davis may have had it right. I don't know what was in the inventor's and their attorney's heads when they wrote this claim. But if you look at the specification, it talks about transformation within the system, not within the systems interface. But then you see the term systems interface and then distribution system being used in the same claim. They clearly must mean different things since the different terms were utilized there. And even more importantly, in Claim 13, which has now been canceled after reexamination, you had claim language in the preamble that said that this was a method of controlling data transformation within said distribution system, not within said systems interface. And that may very well have been what happened. But the consequence of that is not to rewrite the claims. They have never made the argument that this is a Novo versus MicroMolds case that is an obvious error that can be corrected. And it's too late to make it now. And it wouldn't work in any event because the claim language itself won't support that. And the specification won't support it because, you know what, even the specification doesn't support control within the systems interface. It just doesn't. So let me say that with regard to the plain claim language, the structure of it is very clear. I think everyone, every member of this panel, I'm questioning my friends, has had the same problems that we've had with it. And the consequence of this is it's invalid under Allen Engineering. And the standard there is that it would be apparent to one skill in the art. That's what this court's decision in Allen Engineering says. And I think the best evidence of what was apparent is the list of everything that Juxtacon said in its claim construction briefs. There's a bullet-pointed list of this at pages 3905 and 3906 of the joint appendix. But here's an example of what they said. No reasonable person would conclude that the patent calls for data transformation to take place within the systems interface because the patent specification describes no such system. Well, if it has to be apparent to one skill in the art based on the specification that they didn't claim what they regarded as their invention, then it's invalid under Allen Engineering. I think that's enough to be said on the infringement and invalidity points. If I could turn to the disqualification question, I think my friend and I are in somewhat shocking agreement on a point here. And that is that the question of when the conflict took place and the current simultaneous client disqualification was never reached by Judge Davis. And the reason that it was never reached was that the two letters – and here I have to be careful to protect their confidential information here on public record in a public courtroom. But those two letters, which are in the appendix starting at page 4182, were produced about four months after the ruling that Judge Davis made when he said that these were former clients, not current clients. Those letters cast great doubt on that finding and on those assertions. Now, my friend on the other side says that if you affirm, as you should, on the infringement and invalidity points, then this issue is moot. Well, I don't think that's right as a matter of mootness law as we pointed out in our brief. But if that is right, that it is moot, then the proper circumstance here is to vacate the order that was entered by Judge Davis. I heard from my friend that we didn't appeal the issue. Well, we don't appeal issues. We appeal judgments. And what we did is we appealed the judgment that denied disqualification. And so under the Munsingworth Doctrine, as elaborated in the U.S. Bank Court case, I think the appropriate circumstance, particularly because there is the risk of having the collateral estoppel effect of this ruling applied in the pending North Carolina action. Why is there a risk if those agreements were not considered? And there's no doubt about that. Well, I think that ultimately, as we understand that the decision that the North Carolina court would have to make, we agree with you that that should not be an issue because it was done on an incomplete record and quite honestly in my view. And these letters have never been consulted by Judge Davis, right? Well, there was a rehearing argument. So he's heard argument about them. But in denying the motion, he denied everything as a housekeeping matter when he entered the judgment. So there's no evidence. There's no opinion that deals with them. There's no analysis. What I think he did was he granted summary judgment to our side and was able to avoid all of the other problems by just dismissing everything else as a housekeeping matter to get to a final judgment. But yes, you're right. Chief Judge Rader, Judge Davis has not at least given us the consideration of those letters and told us how they might affect the decision on disqualification of the law firm. Those letters, I think, say three things that are germane to the order that he had entered before. One, they say they would probably change the results on the former client versus concurrent conflict issue. They show that the law firm was at that time working on an engagement that was knowingly contrary to SAS's interests at the time because of the foundational aspect of the work. And thirdly, that the compensation arrangement that was entered into was entered into without regard to the representation of SAS. And at the time in 2007 would have allowed them to select on judgment against SAS even if they weren't representing the company. And I think that shows both the current conflict, the nature of the conflict. And I'll just make one last point with regard to the conflict issue. With respect to showing why this is not just a technical de minimis type argument. One of the infringement arguments that we faced in the trial court was that we are not direct infringers or at least principally not. We're said to be inducing infringement. And of course the knowledge part of the inducement requirement has to be met by some extrinsic showing beyond the patent. And what did they use to show that? Well, they showed publicity about the lawsuit before and at the time of the 2007 engagement letter. Did they counsel their then client, SAS, about this risk as they were forming the foundation of the litigation? They did not. And why didn't they? Because they couldn't. That's the conflict. Does the court have any further questions? Was that last argument argued in the briefs? I'm sorry? Did you make that argument in the briefs? Yes, we did, Judge Ring. I'll save whatever rest of my time for a follow-up on that issue. Thank you very much. Okay, thank you, Mr. Kastanian. Mr. Heineke? I have 15 seconds left on the merits. I think the issue that confronts the court is the same issue that comes up in contract and parole evidence. In some jurisdictions, a court is supposed to look at the language and say, if the language seems clear to the court, that's it, we don't consider parole evidence. In other jurisdictions, even if the language is supposed to be clear, the court is supposed to look at parole evidence to see if actually there's the prospect that the parties could have understood the language differently. And we submit that's really what the issue is here. Should the court have looked at the specification, the prosecution history, our experts' declaration, and so on, in trying to arrive at the meaning of the patent? Or was it sufficient for the court simply to look at it and say, I see the language, it's clear, that's it? I submit that's the issue, and the better view is that the court should go and look at everything that's available to make sense of the language, and that that's what, in fact, happened in Chef de Merit. On the disqualification issue, I think if that on the former client issue is over, they don't seek review of that. The current client issue was never ruled on. I don't think this court needs to rule on it, but if it concludes it does, it needs to go back to the trial court to find the facts about who did what, when, where, and how. Thank you very much. Okay. Thank you, Mr. Heineke. Something you need to respond to, Mr. Pastanis? Okay. Thank you.